Good morning, Your Honors, and may it please the Court. My name is Katherine Eidman with Public Counsel on behalf of Appellants in this matter. With the Court's permission, I'd like to reserve a few minutes of my time for rebuttal. This case was filed five years ago by and on behalf of Havasupai children who are seeking to hold the federal government accountable for its admitted failure to comply with 13 of its own discrete regulations. Our government promised to take specific steps to educate these children, and it has a unique responsibility to these children because of the vast land it historically appropriated from the Havasupai and other tribes. The Federal Bureau of Indian Education operates and administers Havasupai Elementary School, the only school available on the Havasupai Reservation, and it has sole responsibility for providing legally mandated educational services to the Havasupai children. Ms. Eidman, I wonder if I might ask you. Assume, arguendo, that we agree with you that there are at least some of the complaints that relate to discrete agency actions. Are there some, however, that don't of your 13? And I'm referring now, for example, to paragraph 235 of your references, CFR 36.20, and that provision states the educational program shall include multi-culture and multi-ethnic dimensions designed to enable students to function effectively in a pluralistic society. How is that a discrete agency action? Thank you, Your Honor. I'd actually like to make two points in response to that question. First, if we looked at the entire text of that regulation itself, the regulation, like the others in this case, is quite discrete and specific as to what it means by multi-culture and multi-ethnic dimensions. That is Part B of the Regulation 36.20, and Part B has four subparts that outline exactly what multi-culture and multi-ethnic dimensions are. First, there has to be assessment of native language and provision of instruction in native language. Second, the aspects of native culture must be integrated in all content areas. Third, there must be assessment of learning styles. And fourth, at least one field trip per year. And then further, the first two subparts of that section require approval by the tribe. So neither the court nor the agency is engaging in discretionary, extensive discretionary determinations as to whether there are, in fact, multi-culture and multi-ethnic dimensions. Discretion is vested in the tribe. And one follow-up, that's a very clear answer. What about the clause, to enable students to function effectively in a pluralistic society? That seems very broad to me. Again, I would reference that I think that the subparts of Part B outline the standard for what it means to have these dimensions that enable students to function in a pluralistic society. And I would note the argument that we're making here is not that there is culturally relevant education, but it's not sufficient to enable students to engage in a pluralistic society. We're arguing that there's no culturally relevant education provided at all. And I would direct this court to the controlling case in this circuit, Vietnam Veterans of America, that expressly took on and rejected an argument of this nature, stating in essence that just because there is some discretion in the implementation of a regulation doesn't mean that there's not a duty to comply with the underlying action itself. So it said some discretion in the manner in which a duty may be carried out doesn't mean that the agency doesn't have an underlying duty to act under Section 706.1. I would like to turn to the tax... I guess let me ask you, how would the district court fashion an injection in this case that would still permit defendants to have discretion over the manner in which they manage HES? What is it that you're looking for from the district court? Your Honor, the relief that we're seeking is simply an injunction directing defendants to comply with their duties under the regulations. And Vietnam Veterans of America also expressly addressed this question and held that an injunction directing an agency to comply with their own regulations doesn't raise any separation of powers, concerns, or detract from the discretion afforded to the agency. And so in that case, the court simply approved an injunction that ordered defendants, the Army in that case, to take the actions required to comply with the regulations. So let me follow up, if I may, on Judge McGeeh's question and also Judge Fitzwater's question. Looking at 36.20, if the injunction said, you know, comply with this, and then there was instruction in the native language for an hour and a half a day, or four hours a day, to the discretion of the BIA, the Bureau of Indian Affairs, to make that kind of discretionary call, and neither of those choices would violate the injunction. Is that how I understand your argument? That's absolutely correct, Your Honor. So but you agree that compelling the defendants here to comply with relevant CFR, I guess it's 25 CFR part 36, would likely result in sweeping changes at HES? I have two responses to that, Your Honor. First, I don't think that's the case. What we're talking about here is one small elementary school, one school out of the Bureau's 183 schools, and serving 70 students out of 40,000 served by the BIE. That is not a broad restructuring of the agency, and Vietnam veterans, again, expressly engaged in this type of analysis when it held that complying with regulations that might affect up to 6,700 people would not amount to a broad restructuring of the Army's programs overall. Second, I want to note that, again, the relief that we're seeking here is limited to simply asking the agency to comply with its duties under the regulations. And the U.S. Supreme Court in Lujan expressly held that where plaintiffs do have actual injury to challenge an agency program, then it's appropriate for the court to provide relief, even if the effect of that relief is to make a broader change that might affect the program as a whole. So you're addressing the question of weakness as to the four student plaintiffs who are no longer attending HES? Yes, Your Honor. The district court improperly dismissed four plaintiffs from the case who are no longer attending HES. The parties agree that these students are proper parties if they have an active controversy against the agency. Here, they do, because they have all sought and are entitled to the remedy of compensatory education. Compensatory education is available under the Administrative Procedure Act, and it's essential for these young people to be able to access high school level curriculum and also participate in society economically and politically as adults. Now, turning first to the issue of availability under the APA, Section 702 of the APA provides that all suits are appropriate, seeking relief other than money damages. And in Bowen v. Massachusetts, the Supreme Court cautioned that this exception for suits seeking money damages should not be broadened beyond the meaning of its plain language. Compensatory education is simply not money damages within the plain meaning of the term. Compensatory education can be expressed in a number of forms. It can be expressed as a fund with a certain amount of money placed in it to purchase educational services, but it can also be expressed as a number of hours or just a direct entitlement to particular services. So here, plaintiffs could be entitled to a certain number of hours of science instruction or time with a counselor. At the very minimum, when compensatory education is expressed in this manner, it simply doesn't fall within the plain meaning of money damages. And even when compensatory education is expressed as a certain amount placed in a fund to purchase educational services, that amount of money is not available to the plaintiffs in cash. It's simply a way of quantifying an entitlement to something substantive, in this case, educational services. And that's why this court, in parents of student W, Prescott, and Park-X-Fell Park, along with every other circuit to consider this issue, has held that for the purposes of the IBEA, compensatory education is not money damages and therefore is available as a remedy under the IBEA, which similarly does not permit relief in the form of money damages. Defendant's primary argument in response to, primary argument with respect to the students who have been dismissed from the case is that the students' claims are moot because a partial settlement in this case provided some funding for compensatory education for each of the plaintiffs that were dismissed. This argument misunderstands the nature of compensatory education and misstates the partial settlement agreement itself. Compensatory education is not a binary. You don't either have compensatory education or you don't. It's available in any range of amounts. Here, this partial settlement agreement provided for $20,000 in services to each of the plaintiffs, and that quantity was not to redress plaintiffs' injuries. It was solely the result of a negotiation between the parties. So the court could and should order additional compensatory education as a remedy if this case were remanded to the district court to assess the claims under the regulations. I would also note that, as I've stated, that agreement was a partial settlement agreement intended only to resolve plaintiffs' disability discrimination claims brought under Section 504 of the Rehabilitation Act. The consideration for receiving that compensatory education was only the release of the 504 claims and not the general education claims that we're talking about here today. And the final point that I'd like to make with respect to compensatory education is that in the context of the IDEA, every court to have considered this issue has held that compensatory education remains available as a remedy after a young person has gone over the age of 21, is no longer in high school, or has moved out of the district. And that includes this court and parents of student W. And the courts there have recognized what is present in this case, which is that to hold otherwise would provide adverse incentives for districts to fail to provide the required services and then just wait out the clock knowing that litigation is lengthy and eventually students are going to get older and age out of school. Or that families need to move to be able to get adequate education services and that in doing so would cause their claim for relief to evaporate. Unless there are further questions. The district court here has a lot of reliance on LUHAD and so I just wanted to give you an opportunity to discuss that. Thank you. Yes, your honor. So what the district court held below was that plaintiff's claims when aggregated rise to the level of an impermissible systemic challenge. And for that proposition the district court relied primarily on LUHAD versus National Wildlife Federation. But that case doesn't hold anything close to the proposition the district court relied on it for. LUHAD is a standing case and the question presented there is whether the organizational plaintiff National Wildlife Foundation was a proper party to challenge the overall land withdrawal review program. The court held that the organization was not a proper party because it couldn't challenge an entire program consisting of thousands of individual actions just because one of those actions affected one of its members. In other words, a plaintiff can't establish actual injury to challenge an entire program just because one of the program's actions. That case is simply completely different than the situation we have here where these students were harmed by every single one of the violations of the 13 regulations we identify. There's been no allegation throughout the course of this litigation that plaintiffs are not proper parties who are aggrieved by the violation of these regulations. And I would also add that this argument that bringing 13, bringing challenges to 13 otherwise reviewable regulations in a single litigation rather than just one makes no sense from a standpoint of judicial administration or from the perspective of the purpose of the APA. Because what that rule would say is that we could bring 13 separate lawsuits and that would be permissible rather than a single one alleging exactly the same violations of law. And then in addition, it would incentivize agencies to engage in additional violations because it would essentially establish a rule that the more violations an agency engages in, the less reviewable the conduct is. Thank you. If you want to reserve the balance of your time, you may. Let's do that. Thank you, Your Honor. All right. Ms. Myron, do you want to state your comments? Thank you, Your Honor. Laura Myron for the United States. May it please the Court, the only question remaining in this case is whether Section 706.1 of the APA is an appropriate mechanism for plaintiffs to bring the claims they've brought. I would point the Court as I'd like to start where some of the questions in the beginning of the presentation were focused, which is that complaint that the plaintiffs have brought, which asks for an injunction that would require defendants to provide, and this is on page 538 of the appendix, access to adequate public education. The remedy that they have asked for makes clear that what they're asking for is programmatic institutional relief that would require the District Court to superintend the operations of the school, and the Supreme Court in both Southern Utah and Lujan has recognized that that is not the appropriate role of the District Court under Section 706.1. If I could point the Court to some of the regulations or statutory provisions at issue in both Lujan and Southern Utah, there were within those provisions some seemingly discrete obligations. For example, this is Lujan at 891, they had alleged the failure, plaintiffs there had alleged the failure to revise land use plans in proper fashion, failure to submit certain recommendations to Congress, failure to consider multiple use, failure to provide required public notice, failure to provide adequate environmental impact statements. And with the Court there... It seems to me that the requirements that are referenced here are much more specific, and the example that was discussed earlier is one of those, providing some of the education in the native language. That's really concrete and really narrow, and what strikes me about I think best by analogy, and it strikes me that the analogy I thought about was a land use or zoning law that says for the safety and aesthetics of the neighborhood, we enact the following 20 regulations. You have to have a minimum setback, your front fence can't be so big, your plumbing has to be at least such and such, your roof has to last for 20 years, and then a suit saying, you know, you're not enforcing these specific requirements, please do that. Even if there are a lot of them, it seems to me it's concrete, and I guess I don't see the difference between that analogy in my thinking and what has happened here. I have two responses to that, Your Honor. The first is that all government operations are at some level an aggregation of individual decisions, many of which are required by law. This is what the Fourth Circuit recognized in the City of New York, and that does not mean that if you bring a claim that is asking for programmatic and institutional relief that targets the regulations at issue here, your analogy was land use, they set out here how to operate a school, and simply by saying, well, we have lots of complaints, you cannot Well, it's one thing to say how do you operate a school, it's another to say, if there's a regulation that says you may have no more than 24 students in a class, you can count and figure that out. So to say that it's programmatic is a label, but it doesn't really answer the question about whether these particular things are sufficiently particular to junction a place that says you haven't been doing any of these things, but you need to start doing them because your regulation requires it. Well, respectfully, Your Honor, this is not a case in which the plaintiffs have alleged, nor does the factual record support, and there was extensive discovery before the trial court that the Department, the Bureau of Indian Education is simply failing or refusing to do any of the things that would be covered by the regulation. Rather, what you see, and this is in the supplemental excerpts of record starting on page 14, and then also in the excerpts of record at 425, you know, extensive instances in which the Bureau is attempting to comply with the regulations, but facing numerous practical obstacles that are involved in operating a school at the bottom of the Grand Canyon. And if you thought that some of these regulations were sufficiently discreet to rise to the level of a 7061 claim, the appropriate thing to do here would be to remand this case to the district court because this is not an instance in which there's, you know, sort of across the board dispute as to whether the regulations apply, which was the case I might point out in Vietnam Veterans of America. There, the government disputed that the regulations in question applied to the circumstances at issue there. And so the court here, the Ninth Circuit determined that it was appropriate to have an injunction that said, you know, in fact, these regulations do apply, you know, to these particular circumstances. Your response leads me to another question entirely, which is whether the parties think it would be to their benefit to, if they haven't already, to engage in our circuit's mediation program. And if you're saying the government agrees that it's bound by these regulations and that they apply and that you'd like to be able to comply with them, is that something that would be useful? Well, there, you know, there was extensive mediation in the number of the claims were settled before the district court related to the Rehabilitation Act. There's currently a monitor in place at the school supervising the implementation and compliance with Section 504 things. And certainly the government, you know, is always open to mediation and has participated in this court's mediation program a number of times. But, you know, I think the factual record here demonstrates that there are significant practical obstacles to implementation of the regulations. And what we're saying before this court is that Section 706.1 is not the appropriate mechanism for plaintiffs to seek relief. That, as Judge Murguia pointed out, it would require the district court to superintend the operations of the school across the board and would likely result in significant oversight of the operations of the school by the district court. Hold on. It seems like you agree that the defendants are required to comply with the regulations at the CFR, 25 CFR Part 36. Is that correct? Yes, Your Honor. I don't believe it's been an issue in this case whether or not the school, the operation of the school. Well, and that you're required to comply with those regulations. Right? As a general matter. Right. Okay. Yes, Your Honor. It sounds like you're arguing that they're not discreet enough. Is that right? That you're saying that they're not discreet and so therefore you don't have to comply with them? No, Your Honor. What we're saying is that the plaintiffs have asked for broad programmatic relief as the district court recognized and that that is not, that they have not presented a cognizable claim. They're asking for broad programmatic relief because they've identified a number of regulations that have not been complied with. I mean, for example, could the plaintiffs challenge the BIA to employ a one-fifth time librarian at HES? Well, Your Honor, I think the question before, the district court recognized, let me say two things. Could they have just fought that one violation of that regulation? I'm having to sort of go through specific, you know, whether or not certain things are. Just answer the question. I think that would be a different case than this one, Your Honor. Because there's more than one? No, Your Honor. In part because the factual support in the record does not demonstrate that the agency has failed to comply with that regulation or has refused that it applies to the circumstances at issue in this case. Instead, what you see when you drill down is, you know, difficulty in retaining that. That's on the merits. That doesn't have to do with whether the lawsuit can proceed. What you're saying now is if it proceeds, we can win. But that seems to me an entirely different question to the one that Judge McGee is asking. Well, Your Honor, this case was resolved on summary judgment. And so the question of whether the factual record would support a claim under 706-1 is relevant to the question before this court. But I believe, as I said earlier, and I would But the district court ruled that this was just similar to Lujan. And I just don't know that, I think that Lujan is very distinguishable from this case. Because it seems like, and you haven't yet persuaded me otherwise, that this regulation that I just gave an example isn't a discrete mandated action. Well, Your Honor, the question under 706-1 is not only whether the action is sufficiently discrete. It is also whether the agency has failed to take the action that it was legally required to take. And if you thought, I believe I mentioned this earlier in response to a previous question, if you thought that there were some parts of the regulations here that are sufficiently discrete, then the appropriate thing to do would be to remand for the district court to sort that out. But it is not the district court's obligation, and this is where I started with Lujan and Southern Utah, to determine whether there may be some sufficiently discrete parts of a regulatory structure that plaintiffs might have been able to identify as appropriate under 706-1. The district court is presented with the complaint that is filed before it. The complaint in this case has repeatedly asked for broad programmatic injunctive relief to provide access to basic education. And if you thought that the district court's resolution of the claims before it was inappropriate, then the appropriate thing would be to remand. I would also, if I could, point the court to Southern Utah, in which the statutory provisions there included a statute that said that wilderness areas shall have no commercial enterprise, no permanent road, no motorized vehicles, and no man-made structures. And the question before the court was whether or not the Bureau was obligated to prohibit the use of off-road vehicles. And the court did not parse the statutory provisions before and say some of this seems more discrete, so we should consider whether a claim might be available under that particular provision. The court said the plaintiffs have asked for broad programmatic relief, which is not available under 706-1 of the APA. And the district court similarly here recognized that what plaintiffs had asked for is the kind of institutional relief that would require the district court to superintend the operation of the school. But Southern Utah seemed to involve, you know, broad statutory obligations. Yes, I think what I'm suggesting is that, you know, there were part components of the statutory obligations in Southern Utah that might have been considered more specific. And the court did not say that the district court's role was to determine whether there are some more specific parts of the statutory scheme under which 706-1 might provide a cognizable claim. The court said the plaintiffs have asked for programmatic relief that would require the district court to involve itself in the operation of the land management, but here the school, and that's not an appropriate role for the district court under the APA. But these are, I guess, these seem to be 13 discrete commands to be performed, you know, through the regulations. And so I'm just trying to figure out... Respectfully, Your Honor, if I could point you to some of that. Some of them are much broader than others. I don't think they're uniform in their specificity. As we started today, there's an obligation for the school to include multicultural and multi-ethnic dimensions through its education. There is an obligation to present student activities that are well-balanced and, you know, other sort of less specific components to the regulations. I don't think it's fair to categorize them all as sufficiently discrete. But even, as I said, if you thought that some of the regulations at issue here might give rise to a claim under 706.1 then it would be appropriate for the district court to sort out whether or not the factual record here would support such a claim because as this court recognized in Ecology Center, it is not appropriate to dress up what is effectively a sufficiency claim, you know, something that might have to do with whether or not the agency is doing a good job of implementing its regulations as a failure to act claim. And the record here demonstrates, and this is even taking plaintiffs' factual allegations alone not the government's responses, that their allegations say things like the library has not consistently been maintained, the BIA has frequently failed to employ a professional counselor, has rarely had enough general education teachers. And what you see when you look at the record is that the agency is facing Excuse me, that seems to me to be, again, a different phase of litigation. If the district court had said I've considered each of these and I don't find, for example, that an injunction is required about the library because the problems have been sporadic and I don't see the need for an injunction, we'd be in a completely different place. But that's not what the district court did. And so, you're saying if we disagree with you, that's the next step, but it isn't the current step, I think. Am I wrong about that? Well, your honor, I'm suggesting that you could resolve this case in one of two ways. One, you could, as the district court did, conclude that plaintiffs are asking for institutional programmatic relief and that it's not available under 706-1. But you could also affirm the district court's decision on the grounds that plaintiffs have not actually alleged a failure to comply with the regulations or a refusal to apply the regulations to the circumstances that issue here and that relief would not be available under 706-1. What I'm suggesting is that if you disagree with us on the first, that it would be appropriate to remand for the district court to have an opportunity to consider the second. You alluded to that it's difficult to comply with these regulations. Is that sufficient basis to support what the district court did? Well, I think that the difficulty speaks to the second point I was making about whether or not what you have here is a case about the agency's failure to act or a case about the sufficiency of the agency's actions and the numerous practical obstacles involved in operating a school at the bottom of the canyon I think are played out in the record and the record supports that the agency is attempting to comply with the regulations. That this is not a case like Vietnam Veterans of America in which the agency disputed the application of the regulations to the facts at issue and that plaintiffs are contrary to what this court said in the ecology center trying to shoehorn a sufficiency challenge into a 706-1 failure to act claim and that's not how the APA is intended to work. But that makes it sound like these may be discrete actions but they're hard and we've tried therefore the court should treat them as broad institutional reform. Is that what you're arguing? No, your honor. I'm sorry if I was it sounded like I was conflating the arguments in that way. What I'm saying is that 706-1 and this is very clear from this court and the Supreme Court's cases provides a cause of action where the agency has failed to act and that's as in Vietnam Veterans of America the agency not only had but disputed their application at all and that what you see in the record here is that the agency has not faced numerous practical obstacles in the implementation of the regulations but as I mentioned before things like whether or not a library has been consistently maintained whether or not staff is consistently at a certain level those are questions about the sufficiency of the agency's actions and they're not cognizable under 706-1. Counselor, you've been referring to 706-1. Is it your position that the only count remaining from the third amended complaint is count 1 and the other counts have been resolved by settlement or otherwise are not at issue? Yes, Your Honor. The other counts other than 1 and 2 have been resolved by settlement. Count 2 which deals with 706-2 of the APA. The plaintiffs have made no arguments as to the district court's dismissal of that count until any arguments to that effect would be waived on appeal so the only remaining question before this court is whether or not 706-1 is an appropriate avenue for relief and if I could just briefly touch on the compensatory education question which was discussed in the earlier presentation the district court correctly recognized that those claims of plaintiffs who have completed 8th grade are moved. They received an offer of compensatory education as part of the settlement. The settlement was a partial settlement but it did not, that particular provision of the settlement did not apply to plaintiffs who had brought claims under Section 504 of the Rehabilitation Act It applied to all plaintiffs, made available compensatory education to all plaintiffs. And lastly I would note that plaintiffs argument about Bowen disregards what the Supreme Court said in Blue Fox which is that it is not simply an equitable versus money damages question and if the court has no further questions we would ask that you affirm. Thank you. Thank you Your Honor. I'd like to just make a few points in response to the prior presentation The first just very briefly is that I want to be abundantly clear that the only relief that we're seeking is enforcement of the specific duties outlined under the 13 regulations that were challenging. Unlike in some of the other case law that the government is relying on, we're not saying that these are examples of a broader policy. We're not saying that the whole is greater than the sum of its parts. We're just saying that the sum of the parts are the sum of the parts. Next, I just want to respond to the point from the Regulation 3643 regarding the Well-Balanced Student Activities Program, which is the only other specific regulation that was identified as discretionary in the presentation. Again, if we look back to the specific text of that regulation in full, there's also a great deal of additional procedural requirements regarding the student activities plan. In that case it has to be approved annually by the school board. Again, the court is not in the position of determining whether a student activities program is well-balanced. That's vested in the school board. And then I also note here that the argument is not that the student activities plan is insufficient. We're not saying that they should have done more arts and less athletics. We're saying that there is no student activities program. And whether it's well-balanced or not that is what is required by the regulation. The next point is with regard to the obstacles that council mentioned. Throughout this litigation, the government has cited obstacles. But if you listen to what they're saying, they're not saying that they can't comply. They're saying that they don't want to undertake the effort necessary to comply with the duties outlined in the regulations. And they're simply asking this court to say that they don't have to follow the law. But as a legal matter, regulations do not become unenforceable just because compliance may be difficult. The Fourth Circuit expressly took this up in South Carolina versus United States and held that the appropriate course in a 706-1 challenge when an agency has failed to comply with a discrete mandatory duty is to enter an injunction even if compliance may be unlikely. And I'd also like to note that in this case, the obstacles that the government is pointing to that make compliance hard are entirely problems of the government's own making. It was the government's decision to cite the location of the Havasupai Reservation at the base of the Grand Canyon despite the fact that Havasupai and the Grand Canyon. And because the government has failed to comply with these regulations for so long, that is the reason why there are significant educational needs at the school that make reforms, that make changes very difficult. They've failed to take basic steps like, for example, presenting a plan to the Tribal Council to expand housing for seven years running at this point. And then as to the facts, as Your Honors correctly noted, this is an appeal of the District Court's grant of summary judgment for defendants. The District Court actually found the opposite of what the defendants are arguing here and held that there was no genuine dispute of material fact that defendants have failed to provide basic education as required by law. That was based on concessions by the Government Council, an oral argument that it has not consistently complied with these legal obligations and the agency doesn't dispute that its efforts have been unsatisfactory and they have fallen short. So the factual record from below is actually the opposite that its undisputed defendants have complied. But regardless we agree with Government Council that the appropriate course here, if this Court finds that the regulations are enforceable, is to remand to the District Court for proceedings consistent with that opinion. I see my time has run out, unless the Court has further questions. Thank you very much for your oral argument presentations here today. The case of Stephen C., a minor by and through Frank C., guardian ad litem, versus the Bureau of Indian Education is submitted. And that concludes our docket for today. Thank you. All rise. This Court for this session stands adjourned.
judges: MURGUIA, GRABER, Fitzwater